**SIGNED THIS: May 10, 2007**

_____
        **MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | In Bankruptcy |
| LUTICIA KAYE BUTLER, ) | |
| ) | Case No. 06-70541 |
|        Debtor. ) | |
| _____ ) | |
| ) | |
| JULIE DOBSKI, ) | |
| ) | |
|        Plaintiff, ) | |
| ) | |
|   v. ) | Adversary No. 06-7174 |
| ) | |
| LUTICIA KAYE BUTLER, ) | |
| ) | |
|        Defendant. ) | |

# O P I N I O N

    Debtor, Luticia Kaye Butler, twice borrowed money from the Plaintiff, Julie Dobski. Because Ms. Dobski was one of the owners of a McDonald's restaurant in Bloomington, Illinois where Ms.

-1-

Butler was employed, the parties agreed that the loans would be paid back through a payroll deduction.  Ms. Butler, however, quit her employment before the loans were fully paid.  Ms. Dobski alleges that Ms. Butler obtained the loans through false pretenses and false misrepresentations and, therefore, the remaining debt should be excepted from Ms. Butler's discharge.  For the reasons set forth below, this Court finds that Ms. Dobski failed to meet her burden of proof and that the debt of Ms. Butler to Ms. Dobski is dischargeable.

At some time in 2002, Ms. Butler approached Ms. Dobski and asked to borrow money.  Ms. Butler was going through a divorce and needed financial help to make ends meet.  Ms. Dobski considered Ms. Butler a long-term, faithful employee of her restaurant and personally lent Ms. Butler $3,675. Ms. Butler signed a handwritten document which said: "I, Luticia Butler agree to pay Julie Dobski $100 every two weeks. Until the balance of $3475.00  $3675-per accts is paid in full, or at which time my divorce is final, and recieve (sic) a settlement that enables me to pay the balance."  The phrase "$3675 per accts" is actually written between the lines, above the "$3475".

Ms. Dobski testified that she was sure that she lent $3,675 to Ms. Butler and could not explain the reference to both $3,475 and $3,675 in the note.  She also testified that she could not remember when in 2002 the loan was made.  She acknowledged that payments

were deducted from Ms. Butler's pay from McDonald's each pay period after the loan was made.

In June, 2003, Ms. Butler again approached Ms. Dobski for a loan. On June 13, 2003, Ms. Butler and Ms. Dobski both signed a typed document which stated: " I Luticia Butler hereby agree to repay Julie Dobski the $100 I have borrowed from her thru a payroll deduction at $25 per pay period until fully paid." Below the signatures under that statement was a handwritten note stating: "Added $5000 6/12 makes total loan $5100 repay at $150 a pay mo." The word "pay" appears to be lined out.

Ms. Dobski testified that she thinks that more than $100 was still due on the first loan at the time that she made the second loan in June, 2003. She was uncertain, however, about the amount of the second loan. She confirmed that payroll deductions continued to be regularly made from Ms. Butler's pay from McDonald's after June 13, 2003.

Ms. Dobski testified that, in December, 2003, Ms. Butler terminated her employment with McDonald's. Ms. Dobski stated that Ms. Butler gave notice that she was quitting to her direct supervisor - not to Ms. Dobski. Ms. Dobski did not know if the notice had been given in writing and she was unable to state any reason that Ms. Butler had given for quitting at the time.

In her answer to the complaint, Ms. Butler asserted that she had quit because she was unable to arrange her work schedule at

-3-

McDonald's to accommodate her court-ordered visitation with her children.  She suggested that she was forced to choose between her job and visitation and that she chose the visitation.  Ms. Butler failed to appear for trial and, accordingly, no evidence was presented about her actual reasons for leaving McDonald's.  Ms. Dobski testified, however, that to the best of her knowledge, Ms. Butler's scheduling requests related to her family situation were always honored.

Ms. Dobski testified that both times she lent money to Ms. Butler, she confirmed with Ms. Butler her intent to continue to work for McDonald's.  She stated that she relied on Ms. Butler's assurances that she would remain an employee of McDonald's and would not have lent the money without those assurances.

Ms. Butler filed her Chapter 7 bankruptcy case on May 9, 2006.  On her schedules, Ms. Butler listed the balance due to Ms. Dobski as $2,400.  Ms. Dobski claims she is still owed $3,675.  Ms. Dobski timely filed her adversary complaint to determine the dischargeability of Ms. Butler's debt alleging that Ms. Butler's representations that she would repay the loan and continue to work at McDonald's were false pretenses and false representations sufficient to except the debt from discharge pursuant to 11 U.S.C. §523(a)(2)(A).

Section 523(a)(2)(A) provides as follows:

> (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an

>     individual debtor from any debt-
>
>                        * * * *
>
>         (2)   for money, property, services, or an
>     extension, renewal, or refinancing of credit,
>     to the extent obtained by-
>
>            (A)   false pretenses, a false
>        representation, or actual fraud(.)

11 U.S.C. §523(a)(2)(A).

In order to prevail under this section for false pretenses or false representation, Ms. Dobski must prove: (1) that Ms. Butler obtained the loans through false pretenses or false representations which she knew to be false or which were made with such reckless disregard for the truth as to constitute willful misrepresentations; (2) that Ms. Butler possessed the requisite *scienter* - she actually intended to deceive Ms. Dobski, and (3) that Ms. Dobski justifiably relied on the misrepresentations. <u>Field v. Mans</u>, 516 U.S. 59, 74-75, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); <u>In re Sheridan</u>, 57 F.3d 627, 635 (7th Cir. 1995). Ms. Dobski has the burden of proving each element of her case by a preponderance of the evidence. <u>Grogan v. Garner</u>, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991).

Ms. Dobski suggests that the first misrepresentation made by Ms. Butler was that Ms. Butler would pay back the loan. The failure to make promised payments in the future is, however, simply a breach of contract and, without more, cannot support a finding of non-dischargeability. <u>In re Christensen</u>, 193 B.R. 863,

-5-

866 (N.D. Ill. 1996); In re Abejuela, 349 B.R. 536, 539 (Bankr. N.D. Ill 2006).

Next, Ms. Dobski claims that Ms. Butler's representations that she would continue to work at McDonald's were false and constituted fraud. Ms. Dobski fares no better here. Illinois law provides that employment is "at-will" absent an express agreement to some other term of employment. McInerney v. Charter Golf, Inc., 176 Ill.2d 482, 485, 680 N.E.2d 1347, 223 Ill.Dec. 911 (1997); Cress v. Recreation Services Inc., 341 Ill.App.3d 149, 171, 795 N.E.2d 817, 277 Ill.Dec. 149 (Ill. App. 2003). Ms. Dobski did not testify that any agreement had been made with Ms. Butler that guaranteed her employment for any particular period of time. Nothing in the evidence presented suggests that Ms. Dobski or the other owners of McDonald's gave up their right to terminate Ms. Butler's employment at any time without cause.

Even if there had been such a modification of the "at will" status of Ms. Butler's employment, however, her failure to remain employed at McDonald's would be, at most, a breach of an employment contract. As set forth above, more than a breach of contract is needed to support a finding of false pretenses or false representations sufficient to except a debt from discharge. Abejuela, *supra*, 349 B.R. *at* 539.

Ms. Dobski's attorney argued that this Court could infer from Ms. Butler's subsequent quitting of her job that Ms. Butler had an

-6-

intent to misrepresent her future employment plans and an intent to deceive Ms. Dobski at the time the loans were made. Relying on In re Paneras, 195 B.R. 395 (Bankr. N.D. Ill. 1996), counsel argued that fraudulent intent may be inferred and established by circumstantial evidence. That is, of course, a correct statement of the law. The facts here, however, do not lead this Court to draw any inferences of fraud or intent to deceive.

Ms. Butler borrowed the first $3,675 sometime in 2002 and, apparently, made substantial progress in paying that loan. Although the testimony was unclear, the documents indicate that the remaining balance on the first loan was only $100 in June, 2003, when the second loan was made. After the second loan was made, Ms. Butler worked another six months at McDonald's and made payments during that time to further reduce the new balance. Although Ms. Butler stated in her answer that she had quit her job because she had been forced to choose between the job and visitation with her children, she did not appear and testify as to those facts at trial. Accordingly, the Court cannot consider the statements made in the pleadings. Ms. Dobski testified that efforts were made to accommodate Ms. Butler's family situation, but Ms. Dobski was not Ms. Butler's direct supervisor and had no personal knowledge as to why Ms. Butler quit. Ms. Dobski had, apparently, never talked to Ms. Butler about why she quit her job. In the absence of any evidence about Ms. Butler's reasons for leaving her job at

McDonald's, this Court cannot infer that Ms. Butler knew at any time in 2002 or in June, 2003, that she would be quitting in December, 2003. This Court cannot infer that Ms. Butler knew she would quit before paying back the loans, nor that she intended to deceive Ms. Dobski with her representations that she would continue to work.

Despite a well-prepared and well-presented case, Ms. Dobski's evidence falls short of establishing by a preponderance of the evidence that Ms. Butler obtained the loans by false pretenses or false representations and that Ms. Butler intended to deceive Ms. Dobski. The debt of Ms. Butler to Ms. Dobski is dischargeable.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###